IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

KARSTEN O. ALLEN,                    )
                                     )
          Plaintiff,                 )          Case No. 7:21-cv-00207
                                     )
v.                                   )          **MEMORANDUM OPINION**
                                     )
LARRY FIELDS, *et al.*,              )          By:   Hon. Thomas T. Cullen
                                     )                United States District Judge
          Defendants.                )

Plaintiff Karsten O. Allen, a Virginia inmate proceeding *pro se*, brings this civil rights action under 42 U.S.C. § 1983 against prison officials L. Fields, T. Lowe, A.T. Collins, C. Davis, C. Manis, K. Stapleton, and R. Harmon. Allen alleges that, while housed at Keen Mountain Correctional Center ("KMCC") in Oakwood, Virginia, Defendants Fields, Lowe, Collins, Davis, Manis, and Stapleton failed to provide him with due process in connection with a prison disciplinary proceeding. Allen also alleges that Fields and Harmon violated his Eighth Amendment rights—Fields by using excessive force when handcuffing him, and Harmon by ignoring his subsequent requests for medical attention. Finally, Allen alleges that Fields filed a false disciplinary report in retaliation against him, violating his First Amendment rights. The matter is now before the court on Defendants' partial motion to dismiss for failure to state a claim. For the reasons discussed below, the court will grant Defendants' motion.

## I.   BACKGROUND

The facts are taken from Allen's *pro se* complaint and, at this stage, are presumed to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On February 21, 2020, Allen was transferred from Sussex I State Prison ("Sussex") to

KMCC. (Compl. ¶ 11 [ECF No. 1-1].) Allen alleges that, upon his arrival at KMCC, he contacted counselor Booth[1] about "conducting an interim [classification] review because a recent disciplinary conviction had been overturned." (*Id.*) Allen alleges that the interim review would "adjust plaintiff's good[-]time earning level and make him eligible for transfer to a lower security level." (*Id.*) Counselor Booth informed Allen that he would need to seek approval of the review from the Unit Manager, Defendant Fields. (*Id.*) When Allen subsequently spoke with Fields about the interim review, Fields allegedly told Allen that he would "look into it." (*Id.* ¶ 12.) Allen then submitted an interim review request. (*Id.*)

Sometime later, Allen followed up with Fields regarding the status of his request, and Fields allegedly stated, "Just because it was overturned doesn't mean your [*sic*] innocent." (*Id.* ¶ 13.) Tensions mounted between Allen and Fields after Fields refused to grant Allen's interim review request. (*Id.* ¶ 14.) Allen alleges that Fields told him that "he would not allow anyone coming from [Sussex] to be transferred without having first stayed at KMCC for one year charge-free." (*Id.* ¶ 15.) When Allen protested this statement on the basis that, "per policy, he wasn't required to stay one year since he'd come to KMCC on administrative transfer rather than security transfer," Fields responded, "I don't care about [Department of Corrections] policy. That's my policy." (*Id.*) Meanwhile, Allen filed a series of grievances regarding the living conditions of his pod, which Fields—the Unit Manager ("UM")—reviewed. (*Id.* ¶ 16.) As a result, tensions continued to rise between Fields and Allen. (*Id.*)

During this time, Allen alleges that he was experiencing pain in his shoulder from a

---

[1] Counselor Booth is not a party to this action.

"medical condition causing chronic pain." (*Id.* ¶ 17.) When Allen notified officials of his condition, officers began "constantly responding to plaintiff's emergency grievances and requests for medical attention." (*Id.* ¶ 18.) On or about April 2, 2020, Allen received an X-ray of his shoulder. (Compl., Ex. E [ECF No. 1-1].) The reviewing medical practitioner concluded that the X-ray results were "within normal limits," and that there would be "no referral to Provider at this time." (*Id.*)

Over the ensuing weeks, Allen and Fields continued to argue over Allen's interim review request and day-to-day issues in the housing unit. (Compl. ¶¶ 20–21.) On April 30, 2020, the tensions between Allen and Fields apparently reached a climax. According to Allen, he and Fields began shouting at one another while Fields was distributing lunch trays. Allen again asked Fields about the interim review, to which Fields responded, "Stop asking me about that!" (*Id.* ¶ 22.) Allen then told Fields that he would be filing a complaint and a lawsuit against Fields for failure to grant him the hearing. (*Id.*) Later that afternoon, Allen alleges that Fields came to his cell and demanded that he step out into the vestibule, where Fields handcuffed Allen, yanking his wrist in the process, and took him to the restrictive housing unit ("RHU"). (*Id.*)

Later that day, Fields filed a disciplinary infraction against Allen, and Allen was served a notice of the infraction while in the RHU that evening. (*Id.* ¶ 23.) The disciplinary Offense Report stated:

> On 4/30/2020, at 04:30[]p.m. in B-410 offender K. Allen did intentionally alter, damage, deface state property by repeatedly kicking the cell door removing paint and defacing the inside of the door. I heard the door being kicked from my office on the third floor and entered the B-4 pod. I could see the door jarring and made eye contact with offender Allen. Unusual behavior–

> Offender Allen admitted kicking the door and stated that he was
> tired of the bottom tier being shorted recreation time. Immediate
> action– Offender Allen placed in mechanical restraints and
> escorted to RHU without incident. Charged per OP 861.1.

(Compl., Ex. B [ECF No. 1-1].) Allen also alleges that, upon arriving in the RHU, he

"immediately" requested medical attention "due to shoulder pain resulting from UM Fields'

yanking of his wrist." (Compl. ¶ 24.)

At approximately 7:00 p.m., Allen filed an Emergency Grievance seeking emergency

medical care for his shoulder pain. (Compl., Ex. C [ECF No. 1-1].) Around 9:30 p.m., after

Allen had returned to his cell, Nurse Harmon came to his pod for pill call and told him that

she was not going to see him because she was already aware of his ongoing shoulder issue.

(Compl. ¶ 24.) At 11:39 p.m., Nurse Harmon responded to Allen's Emergency Grievance,

concluding that it "[did] not meet the definition for an emergency," and instructed Allen to

"sign up for a sick call M[onday]-F[riday]." (Compl., Ex. C [ECF No. 1-1].)

The following day, May 1, 2020, Allen received another X-ray of his shoulder. (Compl.

¶ 25; *see* Compl., Ex. C [ECF No. 1-1].) Allen's X-ray results, dated May 6, 2020, revealed

"degenerative spurring at [the] AC joint; no fracture or acute findings," and indicated that

Allen was "scheduled to see the Provider." (*Id.*)

On May 14, 2020, in anticipation of his upcoming disciplinary proceeding, Allen

submitted a Witness Request Form and a Request for Documentary Evidence (Compl., Ex's.

G, F [ECF No. 1-1].) Allen wished to have his cellmate, A. DeSilva, and Officer Ratliff[2] testify

as witnesses. Allen also requested that KMCC produce pictures of the damage to his cell door,

---

[2] Officer Ratliff is not a named party to this action.

as well as a work order demonstrating the repairs made to the allegedly destroyed property. (*Id.*)

On May 20, 2020, Defendant Disciplinary Hearing Officer ("DHO") Lowe oversaw Allen's disciplinary hearing. (*Id.* ¶ 27.) Lowe denied each of Allen's witness and evidence requests, deeming them "Not Relevant." (*Id.* ¶ 29.) At the hearing, Allen alleges that, "[a]s UM Fields struggled to explain how it was possible for him to observe the alleged removed paint without locking himself inside the cell . . . Lowe interjected, stating that he was not going to let the plaintiff 'argue' with the reporting officer." (*Id.* ¶ 28.) DHO Lowe also allegedly said that "it didn't matter if there was paint missing from the door, that all he needed was the reporting officer saying there was paint missing from the door to be enough for a conviction." (*Id.* ¶ 29.) At the conclusion of the hearing, Lowe found Allen guilty and assessed a $15 fine. (*Id.*) Two days after the hearing, Defendant Collins upheld the conviction. (*Id.* ¶ 30.)

Allen then initiated a series of administrative appeals in which he contended that DHO Lowe's denial of his witnesses and documentary evidence requests were improper, and that Lowe was not an impartial decision maker. (Compl., Ex. J [ECF No. 1-1].) Defendants Davis, Manis, and Stapleton reviewed and affirmed the disciplinary conviction on appeal. (*Id.* ¶¶ 31–33.)

Allen believes Defendants deprived him of his First, Eighth, and Fourteenth Amendment rights, and requests a total of $62,015 in damages. (Compl. ¶¶ 35–52.). Allen's complaint asserts six separate claims: (1) that Fields violated Allen's First Amendment right by retaliating against him by filing a false disciplinary charge against him (Count I); (2) that Fields violated Allen's Fourteenth Amendment right to due process by submitting a false

disciplinary charge against him (Count II); (3) that Fields violated Allen's Eighth Amendment rights by using excessive force by yanking Allen's wrist (Count III); (4) that Lowe violated Allen's Fourteenth Amendment right to due process by (a) denying him the ability to call witnesses or produce documentary evidence at his disciplinary proceeding, (b) finding him guilty where there was no evidence to support the conviction, (c) not being an impartial decision-maker, and (d) failing to provide an adequate reason for his decision (Count IV); (5) that Collins, Davis, Manis, and Stapleton violated Allen's Fourteenth Amendment right to due process by reviewing and upholding his disciplinary conviction (Count V); and (6) that Harmon violated Allen's Eighth Amendment right to be free from cruel and unusual punishment by ignoring his requests for medical help (Count VI). The matter is now before the court on Defendants' motion to dismiss Counts II, IV, V, and VI.

## II.   STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions,

and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

## III.   ANALYSIS

Allen filed his complaint alleging violations under 42 U.S.C. § 1983, which creates a

private cause of action against anyone who,

> under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983. To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States, and that the deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

### A.  Fourteenth Amendment Due Process: Counts II, IV, & V

Allen claims that Defendants Fields, Lowe, Collins, Davis, Manis, and Stapleton denied him due process on three grounds, each in connection with the disciplinary hearing in which he was fined $15. (Compl. ¶¶ 35, 37–44.)

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). In other words, a plaintiff must identify a sufficient liberty or property interest before the court examines whether the procedures attendant to its deprivation were constitutionally sufficient. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In the context of prisons, an inmate

typically can demonstrate a protected interest by showing an "atypical and significant hardship . . . in relation to ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Here, Allen was convicted for "intentionally alter[ing], damag[ing], or defac[ing] state property" at a disciplinary hearing and fined $15. (Compl., Ex. I [ECF No. 1-1].) Allen contends that he has a protected property interest in "the funds in his inmate account," which includes the $15 fine. (Compl. ¶ 45.) The court disagrees. While neither the Supreme Court nor the Fourth Circuit has specified the threshold at which the Due Process Clause is implicated when it comes to monetary fines, several Judges in this district have held that small monetary assessed at disciplinary hearings do not trigger due process protections. *See, e.g.*, *Roscoe v. Mullins*, No. 7:18CV00132, 2019 WL 4280057, at *3 (W.D. Va. Sept. 10, 2019) (granting summary judgment in defendants' favor as to the due process claim where the only penalty was a $15 fine), *aff'd on other grounds*, No. 19-7343 (4th Cir. Oct. 28, 2020); *Ferguson v. Messer*, No. 7:15cv00140, 2017 WL 1200915, at *8 (W.D. Va. Mar. 30, 2017) (concluding that three $12 fines did not give rise to a protected property interest); *Bratcher v. Mathena*, No. 7:15cv00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding $12 fine did not impose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life and so did not constitute a property interest). *But see Bowling v. Clarke*, No. 7:19cv00453, 2020 WL 4340944, at *5 (July 28, 2020) (declining summary judgment and nothing that, "[a]rguably, however, the imposition of that fine, which was deducted from [the plaintiff's] inmate account after an allegedly defective disciplinary hearing, constituted the deprivation of a protected <u>property</u> interest without due process"). The court finds that Allen's

$15 fine was not an "atypical and significant hardship" that triggered due process protections. *See Sandin*, 515 U.S. at 484.

Because Allen has failed to allege a protected liberty or property interest that was implicated by Defendants' actions,[3] the court declines to examine the sufficiency of the process afforded to him at the disciplinary hearing. *See Kentucky Dep't of Corr.*, 490 U.S. at 460. For this reason, the court will grant Defendants' motion to dismiss counts II, IV, and V.[4]

## B. Eighth Amendment Cruel and Unusual Punishment: Count VI

Plaintiff contends that Nurse Harmon violated his Eighth Amendment rights by ignoring his requests for medical attention. (Compl. ¶ 46.) The court disagrees.

"The Eighth Amendment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[A] prisoner claiming an Eighth Amendment violation must allege facts to plausibly show: (1) the deprivation he suffered was 'objectively, sufficiently serious;' and (2)

---

[3] Importantly, Allen does not claim that he suffered any loss of good-time credit, or that he was otherwise subject to a separate atypical or significant hardship that would constitute a protected liberty or property interest. (*See* Plt.'s Mem. Opp. to Defs.' Mot. to Dismiss at 8 [ECF No. 21-1].)

[4] Even if a $15 fine triggered a due process right, though, Defendants would nevertheless be entitled to qualified immunity. The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To determine whether an official is entitled to qualified immunity, the court must first determine whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right. *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). Second, the court must evaluate whether the right was clearly established at the time of the defendant's conduct. *Smith*, 781 F.3d at 100. As discussed previously, Judges of this district have determined that $15 fines assessed at disciplinary hearings do not trigger due process. Moreover, neither the Fourth Circuit nor the Supreme Court has held that the imposition of a $15 fine for a disciplinary infraction triggers due process concerns. It follows that no reasonable official would have known of any possible violation of constitutional rights even if this court were to conclude that imposing such a fine in this instance gave rise to one. *See, e.g., Bowling v. Clarke*, No. 7:19cv00453, 2021 WL 440794 (W.D. Va. Feb. 8, 2021) (reaffirming an earlier ruling that a $15 fine triggered due process protections but concluding that defendants were nevertheless entitled to qualified immunity on this issue).

that prison officials acted with deliberate indifference to a serious risk to his health or safety in allowing that deprivation to take place." *Farmer*, 511 U.S. at 834; *Thomas v. Ponder*, 611 F.3d 1144, 1150–51 (9th Cir. 2010)).

To establish a cognizable claim for denial of medical care, a plaintiff must plead facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A claim of deliberate indifference to a serious medical need has two distinct components. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017); *see also Farmer*, 511 U.S. at 834. "An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson*, 775 F.3d at 178 (quoting *Farmer*, 511 U.S. at 837). This is an "exacting standard," which requires more than "mere negligence or even civil recklessness." *Id.* (citing *Estelle*, 429 U.S. at 106). When a deliberate indifference claim is predicated on a delay in medical care, the Fourth Circuit has "ruled that there is no Eighth Amendment violation unless the delay results in some substantial harm to the [plaintiff], such as a 'marked exacerbation of the [plaintiff's] medical condition or 'frequent complaints of severe pain.'" *Id.* (quoting *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2007)).

Allen's complaint fails to state a claim under both the objective and subjective prongs. As to the objective standard, a serious medical condition is one that has either "been diagnosed

by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (cleaned up). Allen has not alleged facts sufficient to demonstrate the obviousness of any serious medical condition, aside from his complaints of subjective pain to staff. Indeed, his May 6, 2020 X-ray revealed normal degenerative findings rather than an acute injury or condition. (*See* Compl., Ex. D [ECF No. 1-1].) Because Allen has not adduced facts demonstrating symptoms that would indicate an obvious need for medical attention, his claim fails under the objective prong. *Iko*, 535 F.3d at 241.

Allen complaint's also fails to allege facts that, if true, would establish that Nurse Harmon acted with deliberate indifference toward his shoulder injury. From the time he arrived at KMCC, Allen complained of pain in his right shoulder. (Compl. ¶ 17.) Allen notified officials throughout his housing unit of the condition, which he alleges caused the officers in his unit to be "constantly responding to plaintiff's emergency grievances and requests for medical attention." (*Id.*) Moreover, on or around April 2, 2020, Allen received an X-ray of his shoulder, the results of which were deemed to be "within normal limits," and medical officials determined that there was no need for a referral to the provider at that time. (Compl., Ex. E [ECF No. 1-1].)

Even after Fields allegedly "yanked" Allen's wrist on April 30, 2022, Allen received prompt medical attention. (Compl. ¶¶ 22–25.) At approximately 7:00 p.m. that evening, Allen filed an Emergency Grievance seeking emergency medical care for his shoulder pain. (Compl., Ex. C [ECF No. 1-1].) Nurse Harmon responded to Allen's Emergency Grievance the same night, concluding that it "[did] not meet the definition for an emergency," and instructed Allen

to "sign up for a sick call M[onday]-F[riday]." (*Id.*) Even still, Allen received an X-ray of his shoulder the next day. (Compl. ¶ 25.) The X-ray results revealed "degenerative spurring at [the] AC joint; no fracture or acute findings," and indicated that Allen was "scheduled to see the Provider." (Compl., Ex. D [ECF No. 1-1].) In short, when Allen complained of pain after his encounter with Fields, he was promptly seen by a medical provider.

Although Allen contends that he was harmed by the indifference of staff, a claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). Questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). Here, Allen does not describe, in a plausible manner, how his encounter with Nurse Harmon caused him harm, exacerbated his pain, or prevented him from receiving timely and appropriate care for his shoulder injuries. To the contrary, Nurse Harmon spoke to Allen within three hours of the submission of his Emergency Grievance form, and she formally responded to the Emergency Grievance the same night, concluding that his condition did not constitute an emergency. (Compl. ¶ 29; Ex. C [ECF No. 1-1].) Finally, Allen received an X-ray on his allegedly injured shoulder the very next day, the results of which indicated "no acute findings," and made an affirmative referral to the Provider. (Compl., Ex. D [ECF No 1-1].) Nurse Harmon's decision that Allen's Emergency Grievance did not constitute an emergency was, therefore, an exercise of medical judgment.

In sum, the allegations related to Nurse Harmon fall well short of describing deliberate

indifference to a serious medical need. Allen has therefore failed to state a claim under the Eighth Amendment. Accordingly, Defendants' motion to dismiss Count VI will be granted.

## IV.   CONCLUSION

For the reasons discussed above, Allen's complaint fails to state a claim for violations of due process or cruel and unusual punishment against Defendants. Defendants' motion to dismiss Counts II, IV, V, and VI will be granted. The court notes that Counts I and III remain pending.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 27th day of September, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE